Cornell HARRIS, by his next friend Celestine Jordan, Individually and on behalf of all others similarly situated, Plaintiff,

v.

W. E. CAMPBELL et al., Defendants.

Civ. A. No. 78–0929–R.

United States District Court,
E. D. Virginia,
Richmond Division.

June 15, 1979.

Joan De Lise, Louis A. Sherman, Tidewater Legal Aid Society, Norfolk, Va., Stephen W. Bricker, Gerald T. Zerkin, Richmond, Va., for plaintiff.

Daniel R. Hagemeister, Asst. City Atty., City of Norfolk, and Philip R. Trapani, City Atty., Harold P. Juren, Asst. City Atty., Norfolk, Va., for defendants 11–19 Norfolk.

Walter H. Ryland, Deputy Atty. Gen. of Va., Richmond, Va., for defendants 1–10 Commonwealth.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Cornell Harris, a seriously emotionally disturbed child, has filed this action, by his mother and next friend, Celestine Jordan, under "The Education for All Handicapped Children Act of 1975" (20 U.S.C. § 1401, *et seq.*), the Fourteenth Amendment, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202, Va.Code § 22–10.3, *et seq.*, and Va. Const. Art. 8, § 1, challenging the alleged failure of defendant employees of the Virginia Department of Education, Virginia Board of Education, and the Norfolk, Virginia School Division to provide plaintiff an appropriate program of education. Plaintiff seeks declaratory and injunctive relief.

Jurisdiction is alleged under 28 U.S.C. §§ 1343(3) and 1331, the amount in controversy exceeding $10,000.00, exclusive of interest and costs. Plaintiff additionally asks the Court to exercise its pendant jurisdiction to consider the state claims.

Presently before the Court are plaintiff's motions to join parties plaintiff and defendant and to amend his complaint, plaintiff's motion to certify one plaintiff class and three defendant classes, Norfolk, Virginia School Division defendants' motion to dismiss the Norfolk defendants in their individual capacities and to dismiss plaintiff's 42 U.S.C. § 1983 claim against them, and the Virginia Department of Education and Virginia Board of Education defendants' motion to dismiss for failure to state a

claim against them upon which relief can be granted, and for failure of plaintiff to exhaust administrative remedies. Each of the aforementioned motions has been thoroughly briefed by the parties and the motions are ripe for disposition.

In this Court's view, the failure of plaintiff to exhaust his administrative remedies is dispositive of the issues raised at this stage of the proceedings.

Congress enacted The Education for All Handicapped Children Act of 1975, (hereinafter the "Act") in recognition of the facts that millions of handicapped children were not receiving appropriate educational services in public schools, that state and local educational agencies have both the ability and the responsibility to provide appropriate educational services for all handicapped children, but lack the financial resources to fulfill that duty, and that it is in the national interest for the federal government to assist state and local educational agencies' efforts to educate handicapped children. *See* Public Law 91–230, § 601, as amended by Public Law 94–142, § 3(a).

The Act provides for the granting of substantial amounts of federal money to states to assist state and local educational agencies in the appropriate education of handicapped children. 20 U.S.C. § 1411. To qualify for the federal financial assistance, the state must demonstrate to the United States Commissioner of Education both that it has put into effect "a policy that assures all handicapped children the right to a free, appropriate public education", 20 U.S.C. § 1412(1), and that it has met the other listed requirements of 20 U.S.C. § 1412, including establishment of educational priorities and procedural safeguards. As a further prerequisite for receipt of federal funding under the Act, the state must submit to the Commissioner a detailed state plan including numerous policies and procedures, listed in 20 U.S.C. § 1413, designed to assure that the state's handicapped children are identified, individually evaluated, and provided appropriate educations.

The Act also provides extensive procedural rights to the parents or guardians of handicapped children who feel that the schools are not providing their children an appropriate education. These procedural guarantees include the right to a due process hearing before either a local, state or intermediate state educational agency, "as determined by State law or by the State educational agency", and the right to appeal the hearing decision. *See* 20 U.S.C. § 1415(b)(2), (e)(2).

Plaintiff does not attack any provision either of the Act or of the Virginia procedures established pursuant thereto, but contends that defendants are violating the Act by not providing the plaintiff with any education, "appropriate" or otherwise. In response to defendants' assertions that plaintiff must first exhaust his administrative remedies of hearing and appeal in the state agencies, before maintaining the instant action, plaintiff recognizes that the Act requires prior resort to state hearings and appeal when the state is providing an educational program which a plaintiff claims is not appropriate. Plaintiff claims, however, that where, as here, a child claims that the education he is receiving is nonexistent rather than merely inappropriate, he need not first present his complaint for hearing before a state agency.

The Court cannot concur with this view. 20 U.S.C. § 1415 sets forth the procedural safeguards which are granted under the Act to handicapped children and their parents or guardians. 20 U.S.C. § 1415(b)(1)(E) provides that state and local agencies which receive federal funds under the Act must establish and maintain procedures whereby aggrieved parties may

> . . . present complaints with respect to *any matter relating to* the . . . educational placement of the child, or *the provision of a free appropriate public education to such child.*

(emphasis added).

▮▮ Plaintiff, in his complaint, stated that he is "currently at home and is receiving no educational services." Had the undisputed facts conclusively shown that plaintiff was not receiving any education whatsoever and that defendants would not

take any steps to provide him with an appropriate education, defendants' violation of the Act would be clear. In such event, prior resort to administrative remedies would not be a prerequisite to bringing action on the violation in federal district court. Administrative remedies need not be pursued when to do so would be futile. *Davis v. Southeastern Community College*, 574 F.2d 1158, 1160 (4th Cir. 1978).

■ The instant case is not one, however, wherein local school officials have willfully withheld educational opportunities from a handicapped child. The evidence before the Court shows that the Norfolk school officials made extensive efforts to provide plaintiff with educational services both subsequent and prior to October 11, 1978, the date plaintiff filed the instant complaint.

Kate S. Lewis, the program advisor for the Tuition Grant Program in the Department of Special Educational Services operated by the Norfolk School Board, recited the following facts in an affidavit filed with the Court. On September 1, 1978, the Special Education Eligibility Committee approved a tuition grant for plaintiff as an emotionally disturbed child. From September 5, 1978 to October 12, 1978, administrative direction was sought concerning whether plaintiff would be given day or residential placement. On October 13, 1978, plaintiff's file was referred to the James Barry-Robinson Institute, Norfolk, Virginia for consideration for plaintiff's admission. On October 18, 1978, the Institute requested a more complete social history and a new psychological evaluation of plaintiff, and an appointment was made to prepare plaintiff's Individualized Educational Plan. Ms. Lewis further stated that, on November 1, 1978, additional referrals for plaintiff's admission were made to three other private institutions to provide educational alternatives to the pending Barry-Robinson placement application. On December 14, 1978, plaintiff entered the James Barry-Robinson Institute, which plaintiff concedes was "an appropriate school." Shortly after plaintiff's admission to the institute, however, institute officials expelled plaintiff for violent misbehavior.

On December 20, 1978, two days after Ms. Lewis was informed of plaintiff's dismissal from Barry-Robinson, plaintiff's application at another school, Camp Shon Ta'i, was reactivated and referrals were made to two other schools. Plaintiff, his mother and Camp Shon Ta'i officials met on January 24, 1979. Ms. Lewis sent plaintiff's mother a letter on February 9, 1979, seeking a response to a Camp Shon Ta'i offer to place plaintiff in their program. Plaintiff's attorney phoned Ms. Lewis on February 22, 1979 to accept the offer, but unfortunately by that time all of the openings at Camp Shon Ta'i had been filled.

When Norfolk officials learned that no spaces were available at Camp Shon Ta'i, they provided plaintiff with homebound educational services. Plaintiff's homebound instructor stated in an affidavit that, under his tutelage, plaintiff was well behaved, willing to learn, and making good progress.

In light of the extensive efforts to educate plaintiff, this Court cannot now state that the Norfolk school officials have either failed to or refused to provide plaintiff with a "free appropriate public education", as defined in 20 U.S.C. § 1401(18). Plaintiff, rather, must exhaust his hearing remedies under 20 U.S.C. § 1415(e)(2) before maintaining an action in federal court.

For plaintiff these remedies consist of an impartial due process hearing initiated by the Norfolk local educational agency and conducted by an independent hearing officer, with impartial review of the hearing by the State Department of Education. *See,* 20 U.S.C. § 1415(c); *Regulations and Administrative Requirements for the Operation of Special Education Programs in Virginia*, Ch. 5.

It is possible that evidence adduced at the hearing may show that the homebound instruction which plaintiff had been receiving after his dismissal from the James Barry-Robinson Institute was an appropriate interim educational program for him during the period when school officials attempted to find placement for plaintiff in an appro-

priate private school.[1] The Court is additionally aware of the possibility that Camp Shon Ta'i, which plaintiff's lawyer had, in 1979, deemed an acceptable educational placement, may now have an opening for plaintiff. Camp Shon Ta'i officials, while stating they had no room for plaintiff in February, indicated that they anticipated summer openings.

In any event, the issues of whether plaintiff is receiving an appropriate interim education and whether the Norfolk defendants are making good-faith efforts to place plaintiff in appropriate schools, as well as what, if any, steps might prove more effective in placing plaintiff, are matters ". . . relating to . . . the provision of a free appropriate public education . . . ." to plaintiff, 20 U.S.C. § 1415(b)(1)(E), and, as such, must be brought before the local and state agencies prior to review by this Court. These Act requirements represent Congressional recognition of the view expressed by the Supreme Court in another school context that these educational questions lie in an area in which the courts' "lack of specialized knowledge and experience counsels against premature interference with the informed judgments made at the state and local levels." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973).

Plaintiff's claims under the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.*), the Equal Protection Clause, and 42 U.S.C. § 1983 are also premature. The basis of all these claims is substantially the same as that of plaintiff's claim under the Education for All Handicapped Children Act of 1975; all of these claims are founded upon plaintiff's assertion that defendants have discriminated against him by failing to place him in an appropriate educational program at public expense, while providing

appropriate public educational programs at public expense to average children.

There is no basis for a claim before this court of discrimination against plaintiff due to his handicap (29 U.S.C. § 794) or for a claim that plaintiff was denied equal protection of the laws, until plaintiff has exhausted his procedural hearing and review remedies under the Education for All Handicapped Children Act of 1975. Congress enacted the Act ". . . in order to assure [handicapped children] equal protection of the law." Public Law 91–230, § 601, amended by Public Law 94–142, § 3(a). Plaintiff does not attack the Virginia procedures instituted to carry out the State's responsibilities under the Act. The Act under Virginia procedures therefore in the instant case provides plaintiff with equal protection to protect him against discrimination due to his handicap. The determination of whether the defendants violated the Act and what steps they must take to correct any such violations must first be brought before the local and state agencies, as required by law.

Because this Court shall dismiss all of plaintiff's federal claims, there is no basis for federal pendant jurisdiction over the state claims. This action shall be dismissed in its entirety without prejudice against plaintiff in bringing his claims to this court, if necessary, after exhaustion of his administrative remedies.

An appropriate order shall issue.

---

1. Plaintiff notes that in November, 1977, the Norfolk Special Education Placement Committee recommended that plaintiff be placed in a private residential school. Providing plaintiff solely with *permanent* homebound instruction would be inconsistent with this recommendation. Homebound instruction, however, might be appropriate for a short-term education program, for educating plaintiff during a time period when no appropriate private school placement is available or known, and when defendants are making good-faith and earnest efforts to find such placement.