John SESSIONS, Amos F. Carpenter, Lucy Carpenter, George Wightkin, Charles T. Robinson, Anne Parker, Robert E. Godwin, Terrell Hebert, Walter Pender

v.

LIVINGSTON PARISH SCHOOL BOARD, Members of Board, Individually, and as member of Livingston Parish School Board; Wayne Kelly Sibley, Individually, and as member of Livingston Parish School Board; Sharon Kay Varnado Soileau, Individually, and as member of Livingston Parish School Board; Milton D. Hughes, Individually, and as member of Livingston Parish School Board; Vernon D. Garrison, Individually, and as member of Livingston Parish School Board; J. L. "Cub" Covington, Individually, and as member of Livingston Parish School Board; Paul F. Sibley, Individually, and as member of Livingston Parish School Board; Hubert S. Stilley, Jr., Individually, and as member of Livingston Parish School Board; Carew P. Foster, Individually, and as member of Livingston Parish School Board; Carroll Legette, Individually, and as Superintendent of Livingston Parish School Board; Ida Mae Lambert, Individually, and as Supervisor of Special Education, Livingston Parish School Board.

Civ. A. 80–235–B.

United States District Court, M. D. Louisiana.

Nov. 13, 1980.

Leo J. Berggreen, Woodrow W. Wyatt, Marion Weimer, Wyatt & Weimer, Baton Rouge, La., for plaintiffs.

J. Donald Cascio, Denham Springs, La., for defendants.

POLOZOLA, District Judge:

The plaintiffs in this case are parents of handicapped and exceptional children who reside in Livingston Parish in the State of Louisiana. Plaintiffs allege that their children are being deprived of a meaningful, free, appropriate, and public education pursuant to 20 U.S.C. § 1401 et seq., which is commonly known as the "Education for All Handicapped Children Act of 1975" (the Act).

Jurisdiction in this case is asserted pursuant to § 1415(e)(4) of the Act, as well as 42 U.S.C. § 1983, et seq.; and 28 U.S.C. § 1331, § 1343, and under the First and Fourteenth Amendments.

Named as defendants in this case are Carroll Legette, Livingston Parish Superintendent of Schools; Ida Sue Lambert, supervisor of special education; the Livingston Parish School Board and its eight individual members. Plaintiffs contend that the defendants have failed to provide the appropriate education to which the plaintiffs' children are entitled.

There are a number of motions which are pending before the Court. The sole motion to be considered by the Court at this time is defendants' motion to dismiss for lack of jurisdiction based on the plaintiffs' failure to exhaust administrative remedies in accordance with the Act.

The complaint reveals that prior to the 1979–80 school year, handicapped students from Livingston Parish were being educated in the school system of East Baton Rouge Parish (EBR). In late spring of 1979, the EBR system notified the Livingston Parish school officials that the Livingston Parish children would no longer be allowed to attend EBR schools. When school began in August, 1979, the Livingston Parish exceptional children were placed in three classrooms at Denham Springs Junior High School. There was no division of the students based on age or handicap. In October, 1979, the majority of these students were transferred to a renovated five–classroom elementary school in Livingston Parish. Again, the plaintiffs contend that there was no segregation by age, handicap or educational ability. Plaintiffs contend that the defendants' current policy constitutes a failure to provide a meaningful, appropriate education, thereby depriving their handicapped children of certain constitutional rights.

The defendants allege that the Court has no jurisdiction in this matter. They contend that the plaintiffs have failed to exhaust their administrative remedies under the Act, which was enacted by Congress in an effort to ensure that state and local entities receive assistance in fulfilling their obligation to provide appropriate educational opportunities for handicapped children. The Act authorizes substantial federal funds for state and local educational agencies upon a showing that the agencies have established policies and procedures in compliance with the Act. See 20 U.S.C. § 1411, § 1412, § 1413. The Act also contains procedural guarantees to parents who contend that their children are being deprived of an appropriate education.

It is apparent from this legislation that Congress has provided a procedural means for parents to contest the nature and extent of their children's educational opportunities prior to seeking judicial review. Considering the language and legislative history of the statute the Court finds that the intent and purpose of the statute is to encourage parties to seek administrative relief prior to obtaining judicial review. Therefore, since plaintiffs have failed to seek the administrative review provided for in the statute, the Court finds that the plaintiffs have failed to exhaust their administrative remedies as provided in 20 U.S.C. § 1415.

Although no appellate courts have squarely addressed this issue, several district courts have faced the question of exhaustion pursuant to the Act. In *Harris v. Campbell*, 472 F.Supp. 51 (E.D., Va.1979), the Court held that the parents of an emotionally disturbed child were required to exhaust state remedies in alleging that the Virginia Department of Education and the Norfolk Virginia School Division had failed to provide an appropriate education. In *Harris*, the student had received extensive educational opportunities until being expelled from the James Barry–Robinson Institute in Norfolk for disciplinary reasons. Thereafter, he received homebound instruction, which the parents deemed to be inappropriate. The Court concluded that the parents must proceed administratively prior to filing a federal lawsuit. The Court recognized, however, that exhaustion would not be necessary if the plaintiff was being completely deprived of any educational benefits. The Court said:

> "Had the undisputed facts conclusively shown that plaintiff was not receiving any education whatsoever and that defendants would not take any steps to provide him with an appropriate education, defendants violation of the Act would be clear. In such event, prior resort to administrative remedies would not be a prerequisite to bringing action on the violation in federal district court. Administrative remedies need not be pursued when to do so would be futile." 472 F.Supp. at 53–54.

> "[4] In any event, the issues of whether plaintiff is receiving an appropriate interim education and whether the Norfolk defendants are making good–faith efforts to place plaintiff in appropriate schools, as well as what, if any, steps might prove more effective in placing plaintiff, are matters '. . . relating to . . . the provision of a free appropriate public education . . .' to plaintiff, 20 U.S.C. § 1415(b)(1)(E), and, as such, must be brought before the local and state agencies prior to review by this Court. These Act requirements represent Congressional recognition of the view expressed by the

Supreme Court in another school context that these educational questions lie in an area in which the courts' 'lack of specialized knowledge and experience counsels against premature inference with the informed judgments made at the state and local levels.' *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973)." 472 F.Supp. at 55.

In *Armstrong v. Kline*, 476 F.Supp. 583 (E.D., Pa.1979), the Court held that exhaustion of state remedies would be futile and was, therefore, not required. The parents of several exceptional children sought to have their children's educational training expanded beyond the 180–day maximum established by state regulations. The plaintiffs claimed that the six–month regimen resulted in regression of skills and development during the period in which the children were not in school. The parents had failed to pursue any state administrative procedures and the Court concluded that since the defendants had instructed its hearing examiners not to allow any education beyond the 180 days, no exhaustion was necessary.

There is considerable jurisprudence to support the notion that exhaustion is not necessary whenever it is clear that the pursual of administrative remedies would be futile. See *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Porter County Chapter of the Izaak Walton League of America, Inc. v. Costle*, 571 F.2d 359 (7 Cir. 1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1979); *Howard S. v. Friendswood Independent School District*, 454 F.Supp. 634 (S.D., Tex.1978); *Fialkowski v. Shapp*, 405 F.Supp. 946 (E.D., Pa.1975). This is further bolstered by legislative intent as stated by the Act's author, Senator Harrison Williams:

> "Mr. President, with regard to complaints I want to underscore that exhaustion of the administrative procedures established under this part should not be required for any individual complaint filing a judicial action in cases where such exhaustion

would be futile either as a legal or practical matter." 121 Cong.Rec. 37416 (1975).

Citing this language, the *Armstrong* Court, in a footnote, recognized that exhaustion may not have been intended in all cases:

"6. Since named plaintiffs' and the class's failure to exhaust administrative remedies is excused by futility, the Court need not decide whether individual class members, in other circumstances, must exhaust state procedures. Nevertheless, from the legislative history, it would seem that such a requirement would not be imposed under the Act. Continuing his remarks from the ones quoted above, Senator Williams stated:

'Nor is it intended that the availability of these administrative procedures be construed so as to require each member of the class to exhaust such procedures in any class action brought to redress an alleged violation of the statute.' 121 Cong.Rec. 37416 (1975)."

476 F.Supp. at 602.

By providing for an explicit administrative procedure in the Act, Congress has expressed its apparent desire to resolve disputes regarding the education of handicapped children through state agencies trained to handle such matters and not through immediate federal judicial determination. Only when exhaustion would prove absolutely futile should the courts allow a plaintiff to circumvent the administrative process. See *Armstrong,* supra; *Monahan v. State of Nebraska,* 491 F.Supp. 1074 (D., Neb.1980); and *Doe v. Koger,* 480 F.Supp. 225 (N.D., Ind.1979).

In the present case, however, the Court concludes that exhaustion would not be futile. In fact, plaintiffs' complaints, which include general allegations of inappropriate educational opportunities for the handicapped children of Livingston Parish, are those which Congress clearly intended to be initially resolved through state administrative proceedings by persons who are competent to consider and resolve such matters. The plaintiffs would not be engaged in an exercise of futility if they were required to exhaust administrative remedies in this case. Although relief cannot be guaranteed to the plaintiffs, the defendants will at least be called upon to explain their efforts in assuring an appropriate education for exceptional children under the Act.

Unlike cases dealing with specific requests by individual students (see e. g., *Tatro v. State of Texas,* 625 F.2d 557 (5 Cir. 1980), this case deals with an overall plan, or lack thereof, for educating handicapped children within the parish. As in *Harris,* supra, the school system has provided an educational format in the past and is continuing to offer some educational opportunities at this time. At issue is whether or not the defendants have met the "appropriate" standard set forth in the Act. This matter is best left to the discretion of those Louisiana education officials who have been designated and trained to determine such matters. Hopefully, after this matter has been fully considered by the appropriate education officials, this matter may be resolved without further judicial intervention.

■ Because the court has concluded that plaintiffs must exhaust their available administrative remedies, the final question for the Court to determine is whether or not this case should be stayed or dismissed pending exhaustion of administrative remedies. The general rule is that where the plaintiff "enter[s] the federal courtroom prematurely . . . the district court should [dismiss]." *Rhodes v. United States,* 574 F.2d 1179, 1182 (5 Cir. 1978); *National Bank of Commerce v. Marshall,* 628 F.2d 474 (5 Cir. 1980). The retention of jurisdiction in a case where the plaintiff has failed to exhaust administrative remedies would be proper only if the dismissal would cause the plaintiffs to suffer irreparable harm. The Court does not believe that plaintiffs will suffer any irreparable harm in this case. *National Bank of Commerce v. Marshall,* supra.

■ Furthermore, since the § 1983 claim and the claims brought under the First and Fourteenth Amendments result from plaintiffs' contention that the defendants have

failed to provide a free, appropriate public education to the plaintiffs' children, these claims should be dismissed without prejudice pending a resolution of this dispute through state administrative procedures. *Fulford v. Klein*, 529 F.2d 377 (5 Cir. 1976), affd. *en banc* 550 F.2d 342 (1977); *Meadows v. Evans*, 529 F.2d 385 (5 Cir. 1976), affd. *en banc* 550 F.2d 345 (1977), *cert. denied*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457; and *Johnson v. Hardy*, 601 F.2d 172 (5 Cir. 1979).

Therefore:

IT IS ORDERED that defendants' motion to dismiss for failure to exhaust administrative remedies be and it is hereby GRANTED and plaintiffs' suit is hereby DISMISSED without prejudice, reserving to plaintiffs the right to renew their claims in this Court, if necessary, after plaintiffs have exhausted the administrative remedies available to them.

Judgment shall be entered accordingly.