Stephen CALHOUN, a minor, by his parents Paul and Sharon Calhoun, Plaintiffs,

v.

ILLINOIS STATE BOARD OF EDUCATION, VALLEY VIEW COMMUNITY UNIT SCHOOL DISTRICT 365–U OF ROMEOVILLE, ILLINOIS, Board of Education of Valley View Community Unit School District 365–U, Defendants.

No. 81 C 5257.

United States District Court, N.D. Illinois, E.D.

July 7, 1982.

Fawell, James & Brooks, Naperville, Ill., for plaintiffs.

Moss & Bloomberg, Ltd., Bolingbrook, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This action is brought pursuant to the Education for all Handicapped Children Act of 1975, 20 U.S.C. §§ 1400 *et seq.* (EAHCA), § 794 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* (section 794), the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fourteenth Amendment of the Constitution,[1] and the Education Article of the Illinois Constitution, Article 10, § 1. Plaintiffs Stephen Calhoun, a minor, and his parents Paul and Sharon Calhoun seek monetary and injunctive relief against defendants Illinois State Board of Education,[2] Valley View Community Unit School District 365–U and the Board of Education of Valley View Community Unit School District 365–u (the latter two defendants are hereinafter collectively referred to as "defendant school district"). Whatever the source of their claims, plaintiffs charge that defendants have not provided Stephen with a free and appropriate education through their failure, *inter alia,* to hold a multidisciplinary staffing conference, to formulate an

---

1. Plaintiffs allege a Fourteenth Amendment claim, although it is not clear from the complaint or subsequent pleadings whether they are suing under the due process or the equal protection clause of the Fourteenth Amendment. In any event, assuming such a claim has been made by plaintiffs, there is no change in the court's decision since the requirement of exhaustion of administrative remedies under the EAHCA must still be met. *Mitchell v. Walter,* 538 F.Supp. 1111 (S.D.Ohio 1982); *Harris v. Campbell,* 472 F.Supp. 51 (E.D.Va.1979).

2. The Illinois State Board of Education was named as a defendant in this action but it has not been served with process.

Individual Education Placement (IEP), and to determine a proper placement for Stephen within a reasonable time after Stephen's handicap became known to them. In addition, plaintiffs claim that defendants have wrongfully refused to reimburse Stephen's transportation expenses incurred in his move from a Kentucky facility to one in Illinois, which was the result of his parents' change in residence.

Before the court are plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss the complaint. By their motion, plaintiffs request the court to order defendant school district to hold an immediate full staffing and multidisciplinary review for Stephen at a convenient time for plaintiffs and to formulate an adequate IEP. By their motion, defendants seek a dismissal of the action with prejudice on two grounds: first, that the court lacks subject matter jurisdiction because plaintiffs failed to exhaust their administrative remedies and second, that the controversy is moot. For the following reasons, the court grants defendants' motion to dismiss on the grounds that plaintiffs have failed to exhaust their administrative remedies, but the dismissal will be without prejudice. *Rambeau v. Dow,* 553 F.2d 32 (7th Cir.1977).

I.  *Factual Background* [3]

On March 10, 1977 Stephen Calhoun was diagnosed as suffering from mild mental retardation [4] and was admitted into the Oakwood treatment facility of the Kentucky Department of Mental Health. While at Oakwood Stephen attended classes in the Kentucky public school system. Stephen's parents moved to Illinois and on April 30, 1980 they registered and enrolled Stephen in defendant school district. [5] In May 1980 defendants were formally notified of the special education needs of Stephen and were requested to assist Stephen's education pursuant to the EAHCA. In June 1980 defendant school district identified Stephen as a handicapped child whose education was eligible for funding under the EAHCA.

Stephen's parents obtained placement for Stephen in the Madden Mental Health Center of the Illinois Department of Mental Health on July 10, 1980. Later that month the Illinois State Board of Education notified defendant school district that Stephen was not entitled to reimbursement for transportation expenses incurred in his move from Kentucky to his parents' new residence in Illinois. In November 1980 the Madden staff decided that Madden was an inappropriate placement, but Stephen remained there until May 1981. In the interim, Stephen's parents and the Madden staff notified defendant school district that it was in violation of the EAHCA and the school code of Illinois, Ill. S.H.A. ch. 122, § 14–8.02 (1979). [6]

On June 3, 1981 defendant school district held a multidisciplinary staffing conference

---

**3.**  The facts set forth below are gleaned from the complaint and the subsequent pleadings and, solely for purposes of this motion, are taken as true.

**4.**  As a result of this handicap, Stephen qualifies as a handicapped child entitled to the protections of the EAHCA and section 794. Section 1401(1) of the EAHCA provides, "The term 'handicapped children' means mentally retarded ... who by reason thereof require special education and related services." Section 706(6)(B) of the Rehabilitation Act of 1973 provides, "The term 'handicapped individual' means ... any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such an impairment."

**5.**  At this time Stephen was still at the Oakwood treatment facility in Kentucky.

**6.**  Defendants' position is that Stephen's educational needs prior to May 1981 were being served by the Illinois Department of Mental Health pursuant to Ill.Rev.Stat. ch. 91½, §§ 100–9 and 100–11.1. This chapter sets forth the duties and responsibilities of the Illinois Department of Mental Health. Section 100–9 requires the Department "[t]o provide, except as otherwise specified by law, to legal residents of this state who are patients in any institutions or persons receiving services under any program under the jurisdiction of the Department [of Mental Health], board, tuition, and treatment free of charge." Section 100–11.1 requires the Department "[t]o provide for all patients living in state mental health facilities between the ages of 5 and 21 years special education services, as defined by the Department of Mental Health and Developmental Disabilities to the extent that such services are practical for each child's needs."

for Stephen which resulted in an IEP placing Stephen in a summer school program in the defendant school district. After three and one-half weeks, however, Stephen was removed from the program due to the severity of his handicap.

In July 1981 defendant school district recommended a placement for Stephen at Little Friends, Inc., a residential and day treatment center for the handicapped, and on August 31, 1981 Stephen was so placed. Plaintiff was discharged from Little Friends, Inc. on October 15, 1981 because of his violent nature, which plaintiffs allege is the result of Stephen's handicap. Since that time defendant school district has not scheduled a multidisciplinary staffing conference regarding an appropriate placement of Stephen in the evenings or on weekends, when both his parents can attend.[7]

On October 8, 1981 the director of Kendall School attended a staffing conference at Little Friends, Inc. and stated at that meeting—attended by Stephen's parents— that Kendall School would be willing to accept Stephen. Stephen's parents have notified the school district that they will not agree to Stephen's placement at Kendall School until they have had an opportunity to visit the school.[8]

II. *Defendants' Motion to Dismiss*

A. *EAHCA*

The EAHCA is a funding statute whereby states receive federal funds to assist them in providing educational services for the handicapped. *McCowen v. Hahn,* No. 78 C 4233 (N.D.Ill. July 27, 1981); *Loughran v. Flanders,* 470 F.Supp. 110 (D.Conn.1979). Any state educational agency or unit receiving federal funds under the EAHCA must establish and maintain procedures whereby handicapped children and their parents may protect their rights to a "free appropriate public education." 20 U.S.C. § 1415(a).

Section 1415(b)(1)(E) requires the state to provide "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Upon receipt of the complaint the parents must have an opportunity for "an impartial due process hearing" by the local agency. 20 U.S.C. § 1415(b)(2). Thereafter, the aggrieved party may seek review of the local agency's decision by an impartial officer at the state agency level. 20 U.S.C. § 1415(c). Finally, judicial review is guaranteed to any party aggrieved by the final decision of the state level agency. 20 U.S.C. § 1415(e)(2). The State of Illinois, a recipient of EAHCA funds which it distributes to school districts within the state, including defendant school district, has provided by statute for the required state administrative procedure. Ill.Rev. Stat. ch. 122, § 14–8.02 (1979).

---

7. Defendant school district maintains that their actions to ensure Stephen's parents' participation in a staffing conference were in compliance with regulations passed pursuant to the EAHCA. *See* 45 C.F.R. § 121a.345 (1979), currently 34 C.F.R. § 300.345 (1981). It asserts that it made two offers to ensure parental participation in the multidisciplinary conference, both of which were rejected by Stephen's parents. The first offer was to tape-record the conference with Mrs. Calhoun alone in attendance. The tape would then be reviewed by Mr. Calhoun, whose work schedule has hindered his participation in a conference. Defendant school district also offered to hold the conference on the evening of October 21, 1981, when it was having an open house and the multidisciplinary team could have been easily assembled. Defendants argue that the financial and administrative hardship of holding conferences at the convenience of the parents of the 1500 students receiving special education services in the school district would seriously disrupt the proper functioning of the school district and is not required by the regulations.

8. Defendants assert that Stephen's parents have unilaterally caused the delay in Stephen's placement in an appropriate educational setting since Stephen's parents have not notified the defendants that they have visited Kendall School.

When the complaint was filed Stephen was still at Little Friends, Inc. and when subsequent pleadings were filed Stephen was not receiving any educational services. It is not clear whether Stephen is presently placed in an appropriate educational setting.

Defendants assert that the court lacks subject matter jurisdiction because plaintiffs have failed to exhaust their administrative remedies as required by EAHCA and provided by state law. This court agrees.

■ As a general rule, a party is not entitled to judicial relief for an alleged injury until all prescribed administrative remedies have been exhausted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The function of the exhaustion doctrine is that it allows the agency involved to develop a factual record, to apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes—all before a court will intervene. *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1968). The exhaustion doctrine serves the interests of accuracy, efficiency, agency autonomy and judicial economy. *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir.1981). *See also H.R. v. Hornbeck*, 524 F.Supp. 215 (D.Md.1981).

■ The EAHCA on its face requires the exhaustion of administrative remedies prior to bringing suit in state or federal court. 20 U.S.C. § 1415(e)(2); [9] *Mitchell v. Walter*, 538 F.Supp. 1111 (S.D.Ohio 1982); *Parks v. Pavkovic*, 536 F.Supp. 296 (N.D.Ill.1982); *McCowen v. Hahn, supra.*

"[W]here Congress has enacted a specific scheme for obtaining judicial review which includes a directive to the states to provide effective procedural safeguards to protect the rights provided by statute, a federal court shall be circumspect and not exercise its jurisdiction before the contemplated administrative mechanism has had an opportunity to address the alleged deprivation." *H.R. v. Hornbeck,*

*supra* at 217. *See also Harris v. Campbell*, 472 F.Supp. 51, 55 (E.D.Va.1979). Plaintiffs concede that they have not exhausted the administrative procedures required by the EAHCA and set forth in Ill.Rev.Stat. ch. 122, § 14–8.02 (1979).

They argue, however, that the requirements of the exhaustion doctrine need not be met where pursuit of administrative remedies would be futile. *Porter County Chapter of the Izaak Walton League of America, Inc. v. Costle*, 571 F.2d 359 (7th Cir.1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1979); *Parks v. Pavkovic, supra.* Plaintiffs contend that administrative procedures here would be futile because the state has already refused to authorize transportation reimbursement for Stephen's expenses from Kentucky to Illinois, the defendant school district failed to provide a timely IEP after Stephen's enrollment in the district, and Stephen was improperly placed at Madden Mental Health Center.[10]

■ This court fails to see how the above contentions, even if true, would show that the pursuit of administrative remedies would be futile. Indeed, these issues are manifestations of the central issue presented by plaintiffs, which is to require the state to take the steps necessary to provide Stephen a "free appropriate public education", a matter best resolved initially at the agency level. *Ezratty, supra* at 775; *Sessions v. Livingston Parish School Board*, 501 F.Supp. 251, 254 (M.D.La.1980). When Stephen was at Madden Center judicial intervention might have been appropriate to facilitate replacement, given the inordinate delays, *see Parks v. Pavkovic, supra,* but the present disputes are between the local

---

**9.** 20 U.S.C. § 1415(e)(2) states in relevant part: "Any party aggrieved by the findings and decision made [pursuant to the administrative procedures required by the EAHCA] . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought . . . in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph, the court shall receive the records of the administrative

proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

**10.** The court notes that from statements made in exhibits attached to the complaint, it appears that Stephen's parents, not defendants, placed Stephen at Madden Mental Health Center.

board and plaintiff over conference scheduling and approval of alternate facilities. Under these circumstances the interests served by the exhaustion doctrine weigh heavily, and judicial review, if ultimately necessary, will be greatly facilitated by a record of the administrative proceedings. *Walter v. Mitchell, supra* at 1114–1115.

■ In addition, plaintiffs contend in their memorandum opposing the motion to dismiss that the pursuit of administrative remedies is not required in the case at bar because defendants failed to notify Stephen's parents that administrative remedies are mandatory, and did not give directions on the manner in which these remedies must be pursued. The EAHCA states:

"(b)(1) The procedure required by this section shall include, but shall not be limited to—

\* \* \* \* \* \*

(C) written prior notice to the parents or guardian of the child whenever such agency or unit

(i) proposes to initiate or change, or

(ii) refuses to initiate or change,

the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child; [and]

(D) procedures designed to assure that the notice required by clause (c) fully informs the parents or guardian ... of all procedures available pursuant to this section ...."

20 U.S.C. § 1415(b)(1).

The EAHCA does not expressly require notice that administrative remedies must be pursued or directions on the manner in which such remedies should be pursued beyond notice of all the procedures available pursuant to the statute. Plaintiffs have not claimed that they did not receive notice of the available administrative procedures in violation of the above-quoted statutory language. Furthermore, plaintiffs' contention is not properly raised when it was neither previously addressed in the complaint nor addressed in an affidavit attached to their memorandum.

Because plaintiffs must exhaust their administrative remedies before seeking judicial relief and because they have not shown that resort to such procedures would be futile, the EAHCA claim must be dismissed.

**B. Section 794**

Section 794 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* provides in relevant part:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ...."

In the Seventh Circuit a private right of action is available under section 794. *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir.1977). At the time of the *Lloyd* decision there were no regulations providing for an administrative remedy under section 794. The *Lloyd* opinion suggested, however, that after procedural enforcement regulations were issued to implement section 794, the judicial remedy must be limited to review after the exhaustion of administrative remedies. *Id.* at 1286, n. 29. In June 1977 federal regulations that refer to both federal (34 C.F.R. § 104.61, formerly 45 C.F.R. § 84.61) and state (34 C.F.R. § 104.36, formerly 45 C.F.R. § 84.36) administrative remedies became effective. The applicability of state administrative remedies under the EAHCA to section 794 actions is explicitly recognized by 34 C.F.R. § 104.36, which states, "Compliance with the procedural safeguards of section 615 of the Education of the Handicapped Act is one means of meeting this requirement [for procedural safeguards]." *See* n. 11 *infra; Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104, 1111 (N.D.Cal.1979).

Although section 794 does not explicitly require the exhaustion of administrative remedies prior to judicial review, there is authority for this proposition. *McCowen, supra* at 20, n. \*\*; *Johnson v. Brelje,* 482 F.Supp. 125 (N.D.Ill.1979). In *Johnson,* the

court stated that regulations promulgated pursuant to section 794 incorporate the Title VII requirement that a complaining party exhaust all administrative remedies before filing a judicial action. *Id.* at 132, n. 11.

■ Other courts have held that parties claiming discriminatory conduct in violation of section 794, and violations of the EAHCA on the basis of the same conduct, must exhaust administrative remedies on both claims prior to judicial review. *Mitchell v. Walter, supra* at 1117; *Hornbeck, supra* at 222; *Smith v. Ambach,* No. CIV–80–1086) (W.D.N.Y. August 21, 1981); *Harris v. Campbell,* 472 F.Supp. 51 (E.D.Va.1979). This court agrees with the *Smith* court's reasoning that when a party joins claims under the EAHCA and section 794, complete exhaustion of administrative remedies is necessary to prevent the circumvention of EAHCA procedures by the simple addition of a section 794 claim. If this court held otherwise it would render the administrative procedures under the EAHCA virtually meaningless and ignore the substantial overlap between the procedural safeguards established under the EAHCA and section 794.[11] For this reason, plaintiffs' section 794 claim must be dismissed.

### C. *Section 1983*

■ Section 1983 creates no substantive rights of its own, but rather is a remedial statute imposing liability upon those who, under color of state law, work a deprivation upon a person's rights, privileges or immunities otherwise granted by the Constitution and laws of the United States. *Mitchell v. Walter, supra* at 1117; *Harris, supra* at 222. It is not clear from the complaint or subsequent pleadings but the court will assume that plaintiffs' claim under section 1983 is

for damages based on alleged violations of their statutory rights created by the EAHCA and section 794. In plaintiffs' prayer for relief they seek the recovery of actual, compensatory, and punitive damages, as well as attorneys' fees and litigation costs.

Plaintiffs appear to contend that pursuit of their administrative remedies under the EAHCA would be futile because they could not obtain the damages and attorneys' fees and costs that they seek pursuant to section 1983. Because this court finds that none of the statutory provisions on which plaintiffs rely permit the recovery of damages for what is, in essence, a violation of the EAHCA, this futility argument is without merit.

■ In *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981), the Seventh Circuit Court of Appeals held that Congress did not intend to provide an award of money damages for violations of the EAHCA in the absence of exceptional circumstances. The court noted that there were two circumstances in which a limited damage award might be appropriate: first, where a child's physical health would have been endangered had the parents not made alternative arrangements to those offered by the school system and second, when a defendant has acted in bad faith by failing to comply with the EAHCA's procedural safeguards in an egregious manner. The *Anderson* court stated that parents' costs of obtaining services that the school district was required to provide are the only appropriate money damages in these exceptional circumstances; the court held that tort damages were not intended under the EAHCA. *Id.* at 1213–14. *Accord, Ruth Anne M. v. Alvin Independent School District,* 532 F.Supp. 460 (S.D.Tex.1982). No reimbursable claim is presented in the case at bar pursuant to the EAHCA, since it is not alleged that

---

11. For the procedural safeguards required by the EAHCA see Part II–A of this opinion. The procedural safeguards relating to section 5094 are set forth at 34 C.F.R. § 104.36:

"A recipient that operates a public elementary or secondary education program shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who,

because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure."

Stephen's parents had to place him in a private facility because of either exceptional circumstance enunciated in *Anderson.*

▮ The *Anderson* court also held that the EAHCA contains an exclusive remedy for violations of its provisions and, therefore, section 1983 cannot be used as a vehicle for asserting such claims or for seeking damages for violations of that statute. *See also Ruth Anne M., supra* at 475; *Hornbeck, supra* at 223; *Tatro v. Texas,* 516 F.Supp. 968 (N.D.Tex.1981). The *Anderson* court stated, "In sum, the availability of a private right of action under the EAHCA,[12] the detailed statutory administrative and judicial scheme,[13] the fact that Congress intended the EAHCA to create new rights, and the absence of a traditional damage remedy,[14] together compel our conclusion that the judicial remedy provided in the EAHCA was intended to be exclusive" (footnotes added). *Id.* at 1217. Therefore, plaintiffs may not recover damages or attorneys' fees pursuant to section 1983 for the alleged violations of the EAHCA.

▮ Although some courts have held that damages are recoverable for violations of section 794,[15] the Seventh Circuit in *Lloyd, supra,* left this question open when it decided that a private right of action is available under section 794.[16] Nevertheless, our colleague, Judge Shadur, concluded that the *Anderson* decision compels the conclusion that a party "may not seek damages under section [794] *for a claimed wrongful exclusion from the benefits of EAHCA*" (emphasis in the original). *Reineman v. Valley · View Community School District,* 527 F.Supp. 661, 664–65 (N.D.Ill.1981). *Accord, William S. v. Gill,* 536 F.Supp. 505 (N.D.Ill.1982). This court agrees with Judge Shadur's reasoning that because *Anderson* bars a general damage claim under the EAHCA, a person may not recover such damages indirectly through the addition of a section 794 claim. In *Gill,* Judge Shadur stated that "[a]ny other result would create an exception to *Anderson* that would swallow up its rule, because section [794] is *always* available where a plaintiff claims a wrongful exclusion from EAHCA's benefits (emphasis in original). *Id.* at 512. In the case at bar, as in *Gill,* plaintiffs' section 794 claim is one of wrongful exclusion from the benefits of EAHCA; no other federal pro-

12. In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that an action for benefits under the Social Security Act could be brought under section 1983. The *Anderson* court distinguished *Maine* on the fact that the *Maine* plaintiffs were without a remedy for their alleged harm except under section 1983. In *Anderson,* plaintiffs were not dependent on a section 1983 action for relief since the EAHCA provides a private right of action.

13. In *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Supreme Court stated, "When the remedial devices provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20, 101 S.Ct. at 2626. In *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), the Court limited the *Thiboutot* decision in holding that section 1983 is not applicable in situations where the governing statute provides an exclusive remedy for violations.

14. The *Anderson* court found that the most compelling reason for a finding of exclusivity is the inconsistency between the relief provided

by the EAHCA and that available under § 1983. *Id.* at 1216. *Anderson* precludes damages absent exceptional circumstances whereas § 1983 is not similarly limited in the scope of relief it provides; under § 1983 compensatory and punitive damages may be recovered from individuals. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). *But see City of Newport v. Fact Concepts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (punitive damages may not be recovered from municipalities).

15. *See Miener v. State of Missouri,* 673 F.2d 969 (8th Cir.1982); *Hutchings v. Erie City and County Library Board of Directors,* 516 F.Supp. 1265 (W.D.Pa.1981); *Patton v. Dumpson,* 498 F.Supp. 933 (S.D.N.Y.1980); *and Poole v. South Plainfield Board of Education,* 490 F.Supp. 948 (D.N.J.1980). *But see Ruth Anne M. v. Alvin Independent School District,* 532 F.Supp. 460 (S.D.Tex.1982); *Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104 (N.D.Cal.1979).

16. *See also McCowen v. Hahn, supra* at 23, expressly reserving the question whether damages are recoverable pursuant to section 794.

gram is implicated and no other type of discrimination has been alleged. Under the reasoning of *Gill* and *Reineman,* which this court finds persuasive, plaintiffs' damage claim under section 794 is barred.

If neither section 794 nor section 1983 on its own provides a damages remedy for violations of the EAHCA, then obviously the two cannot be used in combination to obtain such a remedy. Such a conclusion is both illogical and prohibited by the *Anderson* court's analysis. In *Mitchell v. Walter, supra,* the court stated, "It is inconceivable that Congress could have intended ... to permit the circumvention of the EAHCA's carefully delineated exhaustion requirement by artful pleading." *Id.* at 1119. *See also Harris, supra* at 55. The *Mitchell* court's reasoning applies equally well to plaintiffs' claim for damages which is not allowed under the EAHCA. Since the EAHCA is an exclusive remedy for violations of its provisions, the section 1983 claim must be dismissed.

For the above reasons, the court grants defendants' motion to dismiss without prejudice to plaintiffs' right to renew their action after the exhaustion of their administrative remedies.[17]

---

**17.** Given the disposition of plaintiffs' federal claims, their pendent state claims under the Education Article of the Illinois Constitution are also dismissed. *Smith v. Galesburg Crown Finance Corp.,* 615 F.2d 407, 422 (7th Cir.1980).